UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
IN RE:

    KAREN S. JOEST,                    CASE NO.: 10-60028

                        Debtor.              Chapter 13
-----------------------------------------------------------
APPEARANCES:

MAXSEN D. CHAMPION, ESQ.
*Staff Attorney for Chapter 13 Trustee*
250 S. Clinton Street, Suite 203
Syracuse, New York 13202

STEVEN R. DOLSON, ESQ.
*Attorney for Debtor*
500 S. Salina Street
Syracuse, New York 13201

Hon. Diane Davis, U.S. Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

      Before the Court is the Chapter 13 Trustee's ("Trustee") objection to confirmation of Karen Joest's ("Debtor") proposed Chapter 13 plan pursuant to 11 U.S.C. § 1325(b)(1)(B).[1] The narrow issue presented to this Court is whether in above median income cases a debtor's reasonably necessary expenses are defined solely by § 707(b)(2), as incorporated in § 1325(b)(3), or does this Court retain the discretion to separately inquire as to the reasonable necessity of a specific expense under § 1325(b)(2). Debtor is an above median income single individual who seeks to retain two encumbered vehicles that she is making payments on. The Trustee contends that under § 1325(b)(2)

---

[1] All statutory references herein are to the United States Bankruptcy Code ("Code"). 11 U.S.C. §§ 101-1532 (2010), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), unless otherwise indicated.

it is neither reasonable nor necessary for this above median income Debtor to repay two vehicles under § 1325(b)(3). In response, Debtor argues that the "ownership costs" are "applicable" to her by virtue of her above median income status, geographical region, and the number of vehicles she actually owns. Based on the within reasoning, the Court overrules the Trustee's objection.

## JURISDICTION

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(L), (b)(2)(O) and 1334.

## FACTS

On January 6, 2010, Debtor filed her voluntary chapter 13 petition, proposed plan, schedules (collectively, "Petition") and Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (hereinafter "Form 22C"), the last of which is otherwise known as the "means test." Pursuant to the information contained on the Form 22C, the Debtor is an above median income debtor.[2]

Debtor's proposed Chapter 13 plan, filed on January 6, 2010 ("Plan"), includes a sixty-month term and a pro rata distribution to general unsecured creditors equal to 17% on allowed claims. The Plan provides for payments of $140 per month from February 2010 to January 2011, $465 per month from February 2011 through July 2014, and $545 from August 2014 through January 2015, for a

---

[2] Under Federal Rule of Bankruptcy Procedure 1007(b)(6) ("FRBP") all chapter 13 debtors are required to fill out Parts I and III of Form 22C and if the debtor is an above median debtor, to calculate his or her disposable income in accordance with § 1325(b)(3). Since Debtor's current monthly income ("CMI"), as defined by § 101(10A), is $4,828.78 per month, or $57,945.36 per annum, and the median income for a household of one (1) for the State of New York is $46,485.00, Debtor is an above median income debtor. For the sake of completeness "current monthly income" ("CMI") is a historical view of a debtor's income. As amended by BAPCPA, CMI is defined as "the average monthly income from all sources," other than Social Security and certain other income, that the debtor received during the six months preceding the filing of the bankruptcy. 11 U.S.C. 101(10A).

total of $21,210.00 over the five year period. The proposed increase in the monthly plan payments corresponds with the repayment in full of two loans that Debtor proposes to pay "outside" the Plan.

Debtor is single and unmarried and has no dependents. As an above median income debtor, pursuant to § 1325(b)(3) she must use Form 22C to determine reasonably necessary expense deductions that are applicable to her under § 707(b)(2). On Schedule B of the Petition, Debtor lists an ownership interest in two vehicles, both of which she seeks to retain. The first vehicle, a Toyota Rav 4, has an alleged value of $11,914.00 and the payoff on this vehicle is $3,919.00. This vehicle will be paid in full within the first year, which amount is reflected by the first increase in Plan payments. The second vehicle, a 1998 BMW Z3, will be paid through the Plan by way of a "cram down" at $4,465.00 subject to a 5% interest rate. Debtor's pre-petition monthly payments as reported on Schedule J of the Petition, were $212.75 for the Toyota and $66.41 for the BMW, respectively. Debtor also proposes to pay pre-petition tax arrears through the Plan and to make ongoing mortgage payments on her residence outside the Plan.

In calculating her "projected disposable income" under § 1325(b)(1)(B), Debtor claims the following monthly deductions for two vehicles on Form 22C in accordance with the Internal Revenue Service's ("IRS") National and Local Standards[3] in effect at the time Debtor sought relief under the Code: (1) a $470 operation cost deductions for two or more vehicles on Line 27A, (2) a $422.59 ownership expense deduction for her Toyota on Line 28, (3) a $276.25 ownership expense deduction for the BMW on Line 29, and (4) a $212.75 amortized deduction on Line 47 for the

---

[3] The National and Local Standards are those promulgated by the IRS and used in collecting delinquent taxes from taxpayers. A copy may be obtained on the United States Trustee Program's Web site. *See* http://www.justice.gov/ust/eo/bapcpa/20080317/meanstesting.htm. The IRS's Local Standards for transportation costs are divided into two categories: "ownership/lease costs" and "operating/public transportation costs," and only the operating costs vary by geography whereas the standard for the ownership cost for up to two vehicles is a nationwide figure.

automobile loan on the BMW and $66.41 for the Toyota.[4] These deductions, coupled with other national and local deductions enumerated under § 707(b)(2) and incorporated by reference in § 1325(b)(3), result in a negative monthly projected disposable income of $28.68 per month on line 58 of Debtor's Form 22C. Debtor's Schedule F of the Petition lists a total of $66,639.00 in non-priority unsecured debt. Specifically, Trustee objects to the ownership cost associated with the second vehicle, the BMW.

The Court first heard this contested matter during its regular confirmation calendar on March 2, 2010, in Utica, New York. Thereafter, the parties submitted memoranda of law on this issue of first impression. On May 6, 2010, the Court took the matter under advisement. The following now constitute the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## ARGUMENTS

The Trustee argues that Debtor is not entitled to deduct more than one vehicle notwithstanding her above median income status. Accordingly, he asserts that Debtor has improperly claimed ownership costs for a second vehicle for which she has no demonstrable need. The Trustee contends that under § 1325(b)(2), Debtor may claim only reasonably necessary expenses and that payments for a second vehicle for a single debtor household are inherently unreasonable. The Trustee argues that § 1325(b)(2) applies to all debtors and that § 1325(b)(3) then directs above median income debtors to claim expenses in accordance with § 707(b)(2). Based on the Trustee's calculations, if payments for the second vehicle are disallowed, Debtor's projected

---

[4] It appears that Debtor inverted the amounts due on her two vehicles on her Form 22C. This calculation error, however, does not impact the outcome of this decision because it does not change the disposable income calculation.

disposable income would be $460.32 per month rather than negative $26.68 per month and general unsecured creditors would receive an additional 2%. Notably, the Trustee has not raised or argued lack of good faith under § 1325(a)(3).

Debtor counters that § 1325(b)(2)'s "reasonably necessary" requirement for an above median debtor is now defined by § 1325(b)(3) to be those expenses that are "applicable" to that debtor. Debtor argues that by importing § 707(b)(2) and the IRS' National Standards and Local Standards into § 1325(b)(3), Congress imposed an objective standard for expenses in above median income cases and stripped bankruptcy judges of any discretion to subjectively and independently review the reasonableness of an expense in those cases. Debtor further asserts that the plain language of § 707(b)(2), as evidenced by Congress' use of two different words, namely "applicable"[5] and "actual," supports her argument that this section delineates when an expense may be claimed as a deduction. Debtor points to BAPCPA's legislative history to clarify that Congress sought to achieve uniformity and to eliminate the inconsistent outcomes that existed between districts prior to the enactment of BAPCPA by implementing § 707(b)(2) and the IRS' National and Local Standard amounts and the means test as part of BAPCPA's amendments.

## DISCUSSION

In discerning congressional intent, "[t]he starting point...is the existing statutory text, and not the predecessor statutes. It is well established that when the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (internal citations omitted). In considering the plain text of § 1325(b)(2) and (3), this Court should consider the context

---

[5] As further discussed *infra*, the Supreme Court has since defined the term "applicable" as used in § 707(b)(2). *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716 (2011).

of these subsections and avoid interpretations that are "senseless" or contrary to congressional intent. *Hamilton v. Lanning*, 130 S. Ct. 2464, 2468–69 (2010). With this plain meaning rule as its touchstone, the Court embarks on its analysis of the term "reasonably necessary" found in § 1325(b)(3) and which is central to this decision.

BAPCPA provides that when a Chapter 13 Trustee or an unsecured creditor objects to confirmation of a chapter 13 plan, the court may not approve the plan unless unsecured creditors are either paid in full under § 1325(b)(1)(A) or the debtor commits all of his or her "projected disposable income" to the plan for a set period of time. 11 U.S.C. § 1325(b)(1)(B). Since Debtor has not proposed a 100% plan, she must devote all of her "projected disposable income to be received in the applicable commitment period" to make payments to her unsecured creditors pursuant to § 1325(b)(1)(B). 11 U.S.C. § 1325(b)(1)(B).

Although Congress did not newly define the term "projected disposable income," it did define "disposable income" under amended § 1325(b)(2) to mean "...current monthly income received by the debtor...less amounts reasonably necessary to be expended...for the maintenance or support of the debtor or a dependent of debtor...."11 U.S.C. § 1325(b)(2)(A)(i).[6] For above median income debtors, § 1325(b)(3) directs that "[a]mounts reasonably necessary to be expended" § 1325(b)(2)(A)(i) "shall be determined in accordance with subparagraphs (A) and (B) of § 707(b)(2)." 11 U.S.C. § 1325(b)(3). Under §707(b)(2)(A)(ii)(I), an above median income debtor's monthly expenses

---

[6] Section 1325(b)(2) also includes deductions for amounts "reasonably necessary to be expended" for certain domestic support obligations and for charitable contributions under §1325(b)(2)(A)(i) and (ii), and "expenditures necessary for the continuation, preservation and operation" of any business in which the debtor is engaged under § 1325(b)(2)(B), which sections are not implicated in the present case.

> *shall be* the debtor's applicable monthly expense amounts specified under the National Standards and the Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief.

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).[8] The disposable income calculation has both an income and expense component to it and varies under § 1325(b)(2) and (b)(3) depending on whether a debtor is a below median income debtor or an above median income debtor. By virtue of how § 1325(b)(2) is written, both before and after the enactment of the BAPCPA, below median income debtors' disposable income is determined on a case-by-case basis by deducting reasonably necessary expenses as reflected on Schedule J of the petition from a debtor's CMI. *Ransom,* 131 S.Ct. at 725 n.5; *Lanning*, 130 S. Ct. at 2470. Because Debtor is an above median income debtor, however, she is required under § 1325(b)(3)(A-C) to calculate her disposable income by deducting from her CMI expenses claimed in accordance with § 707(b)(2)(A) and (B). 11 U.S.C. §§ 707(b)(2)(A) and (B), 1325(b)(3)(A- C). *Ransom,* 131 S. Ct. at 721-22; *Lanning*, 130 S. Ct. at 2470.  In completing the Chapter 7 means test, § 707(b)(2) directs all above median income debtors to claim allowances for defined  living expenses  and for secured and priority debt on the Form 22C. *Ransom,* 130 S. Ct. 722, 11 U.S.C. § 707(b)(2)(A)(ii-iv).

Applying the statutory framework to the instant case, this Court must determine whether a single above median debtor residing in a household of one person is allowed to deduct the ownership

---

[8] The IRS Local Standards are found in the Internal Revenue Service Financial Analysis Handbook and include both transportation and housing related expenses. The transportation category is apportioned into two components, one related to the costs associated with financing vehicle acquisition, which the IRS refers to as "ownership costs," and the other related to costs associated with vehicle operation, which the IRS refers to as the "operating costs." IRS Collection Financial Standards are available at http://www.irs.gov/individuals/article/0,,id=96543,00.html. The standardized transportation ownership costs in effect at the time Debtor filed her Petition was $489 for the first car and $489 for the second car.

costs associated with her second vehicle as an amount that is reasonably necessary for her maintenance and support. As with many of the BAPCPA amendments, the importation of the § 707(b)(2) means test into § 1325(b)(3) has given rise to a number of debates regarding the calculation of an above median income debtor's projected disposable income. Subsequent to the parties briefing this issue, the Supreme Court of the United States rendered *Lanning* and *Ransom,* both of which involve PDI and are dispositive to the Court's analysis. *Lanning* addresses the income component and *Ransom* the expense component of the PDI equation. The Trustee did not object to how Debtor has calculated her CMI, but asks this Court to exercise broader discretion with respect to the Debtor's claimed deductions than either *Lanning* or *Ransom* permit.

In *Lanning*, the Supreme Court decided how a bankruptcy court should calculate a debtor's "projected disposable income" when a debtor's financial circumstances have changed in the CMI period leading up to the filing. *Lanning*, 130 S.Ct. at 2469–70. The debtor in *Lanning* received a one-time buyout from her former employer during the six month period leading up the bankruptcy filing, thereby rendering her an above median income debtor for her state. *Id.* at 2470–71. Her disposable income calculation as reflected in the Form 22C would have required the debtor to make monthly plan payments to unsecured creditors far in excess of what she could actually afford. *Id.* In deciding whether the bankruptcy court could consider the debtor's change in circumstances, the Supreme Court focused on the word "projected" as used in "projected disposable income" in § 1325(b) and acknowledged that prior to the enactment of BAPCPA, bankruptcy courts "had discretion to account for known or virtually certain changes in the debtor's income," and the amendments to BAPCPA did not reflect an intent by Congress to alter this authority. *Id.* 2472–73. Based on the plain language of BAPCPA as amended, as well as past precedents that remained unaltered by the amendments, the

8

Supreme Court concluded that "when a bankruptcy court calculates a debtor' projected disposable income, the court may account for changes in the debtor's income that are known or virtually certain at the time of confirmation." *Id*. at 2478. [9]

The Supreme Court's holding in *Lanning* is an endorsement of a bankruptcy court's discretion but it only extends to those sections of the Code that Congress did not explicitly modify. The Supreme Court acknowledged that, unlike the term "projected disposable income," the phrase

> 'amounts reasonably necessary to be expended' in § 1325(b)(2) is [] newly defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for 'maintenance or support,' see § 1325(b)(2)(a)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included, see §§ 707(b)(2), 1325(b)(3)(A).

*Lanning,* 130 S. Ct. at 2471. This language clarifies that the ownership expense amount Debtor claims for her second vehicle is a "newly defined" expense as amended in §§ 707(b)(2) and 1325(b)(3). This amendment applies in all above median income cases and serves as a signal to this Court that Congress intended to modify its ability to independently access the reasonableness of this defined expense. Moreover, § 1325(b)(3) states plainly that Debtor's reasonably necessary expenses "shall" be determined "in accordance with" § 707(b)(2) by using IRS standard amounts that are "applicable" to her. 11 U.S.C. §§ 707(b)(2) and 1325(b)(3). "Although context may sometimes suggest otherwise, 'shall' typically means 'must,'" and the mandatory language in subsection (b)(3) gives Debtor no choice but to look to subparagraphs (A) and (B) of § 707(b)(2) to determine whether the expenses she is claiming as applicable to her are "reasonably necessary." *See In re Van Bodegom*

---

[9] *Lanning* resolved a significant split between the circuit courts on the income side of the "projected disposable income" equation by determining the forward-looking approach rather than the mechanical approach to be the correct approach . Compare, *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008)(adopting forward-looking approach), *with Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008)(adopting mechanical approach).

*Smith*, 383 B.R. 441, 447 (Bankr. E.D. Wis. 2008) (citing *In re Farrar-Johnson*, 353 B.R. 224, 228-29 (Bankr. N.D. Ill. 2006)). By claiming the newly defined ownership expense for her second vehicle and by "tak[ing] into account" known changes to her expenses in the future as evidenced by the proposed increase in her Plan payments during the life of the Plan, Debtor's Plan does not run afoul of the *Lanning* holding. The Court is nonetheless required to decide whether it retains discretion to deny confirmation under § 1325(b)(2) when Debtor is directed under § 1325(b)(3) to claim expenses in accordance with § 707(b)(2). For the foregoing reasons, the Court concludes that under *Ransom* it does not.

In *Ransom*, the debtor did not have a corresponding ownership cost associated with a vehicle because he owned the vehicle outright yet claimed the full expense amount for "ownership/lease costs" under § 707(b)(2). The debtor argued that the expense was "applicable" to him by virtue of his above median income status, and the unsecured creditor objected to confirmation of the plan under § 1325(b)(1)(B), arguing the deduction for the non-expense incorrectly caused debtor's monthly disposable income to be $210.55 rather than $681.55. *Ransom,* 130 S. Ct. at 721. Because the Code did not define the word "applicable," the Supreme Court resorted to its ordinary meaning. *Id.* at 724 (citing *Lanning*, 130 S.Ct. at 2471). Upon determining that the word's ordinary meaning meant "capable of being applied: having relevance, or fit, suitable, or right to be applied: appropriate," *id.,* as defined in leading dictionaries, the Supreme Court found that in order for an expense to actually be "applicable" within the plain meaning of the statute, the deduction had to be appropriate for the debtor claiming it "[a]nd a deduction is [] appropriate only if the debtor has costs corresponding to the category covered by the table–that is, only if the debtor [would] incur that kind of expense during the life of the plan," *id*. The Supreme Court reasoned that if a debtor qualifies for

10

the deduction by actually incurring an expense under § 1325(b)(3), then under § 1325(b)(2) the expense could be deducted from CMI as an amount "reasonably necessary to be expended." *Id.* at 725 n.5. The Supreme Court found that this interpretation of the word "applicable" avoided anomalous results and was consistent with Congress' stated purpose that debtors "repay creditors the maximum amount they can afford,"[10] which the Court found "best achieved by interpreting the means test, consistent with the statutory text to reflect a debtor's ability to afford repayment." *Id.* (citing *Lanning*, 130 S.Ct. at 2464). Ultimately, the Supreme Court held that an above median income chapter 13 debtor who does not make a loan or lease payment on a vehicle may not take the IRS' transportation ownership expense allowance.[11] Based on the Supreme Court's holding, whether an above median income debtor is permitted to claim the vehicle ownership cost deduction depends on whether the debtor is actually incurring costs associated with the acquisition of the vehicle. Since Debtor *sub judice* is making payments on two vehicles, under *Ransom* the ownership cost expense is applicable to her and she may claim the deduction for both of her vehicles.

In reaching its decision in *Ransom,* the Supreme Court referred to the IRS' Collection Financial Standards. Although the Supreme Court's approach appears at first to seemingly complicate

---

[10]

"Congress enacted BAPCPA to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P. A. v. United States*, 130 S.Ct. 1324 (2010). In particular, Congress adopted the means test–"[t]he heart of [BAPCPA's] consumer bankruptcy reforms" (H.R.Rep. No. 109–31, pt.1, p.2 (2005)) to insure the "debtors repay creditors the maximum they can afford." *Id.*

[11]
In deciding when an expense is "applicable" in above the median cases, the Supreme Court again resolved a significant split among circuit courts. *Compare In re Ransom,* 577 F.3d 1026, 1027 (9th Cir. 2009) (case below) (the plain language of the statute "does not allow a debtor to deduct 'an ownership cost'...that the debtor does not have,'" *with In re Ross-Tousey*, 549 F.3d 1148, 1162 (7th Cir. 2008) (an above median debtor who has no monthly vehicle ownership or lease payment may claim a vehicle ownership expense deduction when calculating his disposable income).

the analysis in this case, ultimately the Court rejected the idea that Congress incorporated the IRS standards into § 707(b)(2) of the Bankruptcy Code. In so holding, Justice Kagen expressly stated that

> [a]lthough the statute does not incorporate the IRS' guidelines, courts may consult this material in interpreting the National and Local Standards; after all, the IRS uses those tables for a similar purpose – to determine how much money a delinquent taxpayer can afford to pay the Government. *The guidelines of course cannot control if they are at odds with the statutory language*. But here, the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion that, under the statute, a debtor seeking to claim this deduction must make some loan or lease payments.

*Id.* at 726 (emphasis added). Justice Kagen further clarified in Footnote 7 that

> Because [Justice Scalia's] dissent appears to misunderstand our use of the Collection Financial Standards, and because it may be important for future cases to be clear on this point, we emphasize again that the statute does not "incorporat[e]" or otherwise"impor[t]" the IRS's guidance. The dissent questions what possible basis except incorporation could justify our consulting the IRS's view, post, at 4, n., but we think that basis obvious: the IRS creates, the National and Local Standards referenced in the statute, revises them as it deems necessary, and uses them every day. The agency might, therefore, have something insightful and persuasive (albeit not controlling) to say about them.

*Id.* at 726 n.7. The Supreme Court's conclusion that the IRS guidelines are not incorporated into the Code is buttressed by the fact that Congress did not pass a prior version of BAPCPA which would have required a bankruptcy court to refer to the IRS guidelines in calculating expenses for the means test. The prior draft, unlike the final version of the BAPCPA, directed that

> ...the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor in the area in which the debtor resides *as determined under the Internal Revenue Service financial analysis* for expenses in effect as of the date of the order for relief.

H.R. 3150, 105th Congress (1998)(emphasis added). By deleting this reference to the IRS manual in the final version, this Court concludes that Congress did not wish for bankruptcy courts to be bound to the restrictions and parameters set forth therein. Moreover, while the Supreme Court referred to

the IRS guidelines in *Ransom*, it did so because the Code did not define the word "applicable" and after referring to the word's ordinary meaning it found that the definition the Supreme Court authorized actually mirrored the IRS guidelines advanced for that particular category. For this reason, this Court concludes that the Supreme Court referred to the IRS guidelines for definitional purposes and in support of their interpretation of the word "applicable." If this were not the case, the Court's directive that the recommendations do not control, and that bankruptcy courts are not bound by IRS guideline recommendations if they are at odds with the plain language of the statute, would be rendered meaningless.

If this Court consults the IRS guidelines, as *Ransom* suggests may be done, under the heading "transportation," the Court notes first that this category is not based on household size but rather it permits a maximum allowance for the lease or purchase for a vehicle for "up to two vehicles." *See* http://www.irs.gov/irm/part 5/ch 15. Section 707(b)(2)(A)(ii)(I) likewise does not account for household size for this Local Standard and the Form 22C also simply limits a debtor's ability to claim expenses for up to two vehicles under this IRS standard. Therefore, the IRS category and this § 707(b)(2) subsection are not at odds and Debtor is not prevented from claiming ownership costs for up to two vehicles. However, a further inquiry shows that IRS Revenue Manual (IRM) does not necessarily permit a single delinquent taxpayer to claim a deduction for more than one vehicle. Indeed, that section of the IRS Manual states in pertinent part that "[a] single taxpayer is normally allowed ownership and operating costs for one vehicle." *See Internal Revenue Service Manual, Financial Analysis Handbook*, Pt. 5, ch. 15, §5.15.1.9. In *Ransom*, the Supreme Court held that if a debtor qualifies for a deduction by actually incurring an expense under § 1325(b)(3), then under § 1325(b)(2) that expense *can be deducted from CMI as an amount "reasonably necessary to be*

13

*expended.*" *Id*. at 725 (emphasis added). Since Debtor is actually incurring an expense for the second vehicle under § 1325(b)(3), she may deduct it as a "reasonably necessary" expense under § 1325(b)(2). Since the IRS guidelines are at odds with the plain language of § 707(b)(2)(A)(ii)(I) as incorporated into § 1325(b)(3), and as instructed by the Supreme Court in *Ransom*, the IRS guidelines do not control. Under this framework, the Court determines that the ownership costs deductions claimed by Debtor for both vehicles are permitted as "reasonably necessary" expenses under the plain language of the statute.

The Trustee cites to the following cases in support of his argument that the "reasonably necessary" language found in § 1325(b)(2) requires the Court to independently access the reasonable need of an expense claimed by above median debtors under §1325(b)(3): *In re Coffin*, 396 B.R. 804 (Bankr. D. Me. 2008) (finding that the determinative standard for a Chapter 13 debtor's expenses is reasonableness and necessity and that a non-expenditure does not qualify as such);[12] *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007)(holding that § 1325(b)(3) should not be interpreted as categorically substituting the § 707(b)(2) expense restrictions for the 'reasonably necessary' expense requirement already imposed by § 1325(b)(2)); *In re Winslett*, 2010 WL 5112171 (Bankr. D. S.C. Feb. 19, 2010) (finding that the ownership and operating expenses for a single debtor for more than one car on account of adult children should not be allowed); *In re Broers*, 2007 WL 4166144 (Bankr.

---

[12] The Trustee acknowledges that the holding in *Coffin* involved a single debtor who claimed ownership expenses for two (2) vehicles he owned outright, but asks this Court to extend that court's reasonably necessary analysis to this case. Since the parties submitted this matter, the First Circuit Bankruptcy Appellate Panel ("BAP.") reversed and remanded the matter back to the bankruptcy court. See *Coffin v. eCast Settlement Corp. and Peter C. Fessenden, Chapter 13 Trustee*, 435 B.R. 780, 791 (B.A.P. 1st Cir. 2010) (holding an above median debtor who "owns and operates a vehicle and, therefore, incurs expenses related to it" is allowed to claim the deductions for it). The Supreme Court subsequently held in *Ransom* that a "debtor who does not make loan or lease payments may not take the car ownership deduction," thereby overruling the BAP's decision. *Ransom,* 131 S. Ct. at 725. As a consequence, this Court finds *Ransom* dispositive as discussed *supra*.

E.D. Wash. Nov. 20, 2007) (finding the court does not retain authority to determine whether debtor's expenses are reasonably necessary under § 707(b)(2), but that the means test, Form 22C and IRS standards all require interpretation and application and give the court the authority and discretion to deny the ownership expense for second vehicle because it would be unreasonable to ask creditors to fund a second vehicle for a single debtor, for which there is no demonstrated need). Both the *Coffin* and *Broers* cases involved above median income debtors who claimed a vehicle ownership costs deduction for vehicles they owned outright, which issue the Supreme Court decided in *Ransom*. In *McGillis*, the debtors claimed deductions for two debts they did not intend to pay but argued the debts were "contractually due" and therefore could be deducted under §707(b)(2)(iii). This precise issue is not before the Court. Finally, the *Winslett* case involved a single debtor who claimed the ownership deduction for more than one vehicle. *Winslett,* 2010 DC 5112171*,* at *2. However, since her two adult children drove the second and third vehicles to and from school and work, the court decided that based on its "prior decisions regarding a parent's contributions (in whatever form) toward the continuing education of a child over the age of 18," that "the ownership and operating expenses for more than one car, *on account of adult children*, should not be allowed." *Id.* (emphasis added). Because the court's conclusion was premised on its prior decisions involving expenses incurred for education on behalf of adult children under § 707(b)(2)(A)(ii)(IV)[13] of the Code, *Winslett* is distinguishable from the matter *sub judice*.

---

[13] This subsection provides,
> In addition, debtor's monthly expenses may include the actual expenses for each dependent child less that 18 years of age, not to exceed $1,650 per year per child to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

11 U.S.C. § 707(b)(2)(A)(ii)(IV).

Debtor asks this Court to follow *In re Pearl*, 394 B.R. 309 (Bankr. N.D.N.Y. 2008) (holding that joint debtors are permitted to take the ownership costs on the Form 22C related to a vehicle that they owned outright since the deduction recognizes that ownership involves "more than simply a monthly car payment [as] [t]here are also costs associated with insurance and registration") and District Judge Gary L. Sharpe's affirmance of Retired Chief Judge Gerling's decision in the unreported decision *Swimelar v. Pearl (In re Pearl)*, No. 6:08-cv1093 (GLS) (N.D.N.Y. June 22, 2009) (concluding that "applicable" standardized expenses referred to in § 707(b)()(2)(A)(ii)(I) do not have to be "actual" expenses because Congress specifically refers to "actual" expenses later in the statute, therefore "applicable" and "actual" cannot be given the same meaning)(citing *In re Ross-Tousey*, 549 F.3d 1148 (7th Cir. 2008)). Debtor's interpretation of the term "applicable" must likewise fail as *Ransom* makes clear that expenses that an above median income debtor is actually incurring may be claimed under § 707(b)(2). *Id.*

With the enactment of BAPCPA, Congress determined that in above median income cases a debtor's projected disposable income is no longer calculated simply by subtracting debtor's expenses listed on Schedule J from debtor's income listed on Schedule I. Rather, reasonably necessary expenses and deductions are now defined in § 707(b)(2) and imported into § 1325(b)(3) for above median income debtors in chapter 13. Moreover, the Supreme Court of the United States has determined that if a debtor qualifies for the deduction by actually incurring the expense under § 1325(b)(3), then under § 1325(b)(2) the expense can be deducted from CMI as an amount "reasonably necessary to be expended." *Id.* By implementing § 1325(b)(3), Congress's objective was to limit a bankruptcy court's discretion by mandating an objective means test and standardized amounts to avoid disparate results understanding that the National and Local Standards would be

subject to "clear, defined standards, no longer left 'to the whim of a judicial proceeding.'" *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006) (citing Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. J. 485, 527 (2005) (quoting the Congressional record)).

## CONCLUSION

Although the Trustee's argument is attractive because it preserves the Court's discretion as it existed before the enactment of BAPCPA, the Court concludes that such an interpretation is out of step with both the plain meaning of the statute and the intent of Congress in adding § 1325(b)(3) as part of BAPCPA's shaping reform. For the reasons stated above, the Court overrules the Trustee's objection, and it is further,

ORDERED, that Debtor's Plan is hereby confirmed.

**IT IS SO ORDERED**

Dated at Utica, New York
this 17th day of March 2011

    /s/ DIANE DAVIS
DIANE DAVIS
U.S. Bankruptcy Judge

17